IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALABAMA STATE PORT AUTHORITY, An Agency of the State of Alabama, | : | |
| | : | |
| Plaintiff, | : | |
| vs. | : | CA 15-0172-KD-C |
| CHIPPEWA LAKES, LLC, | : | |
| Defendant. | | |

### WRITTEN REPORT AND RECOMMENDATION

This cause came on for oral argument before the undersigned on July 16, 2015, relative to the pending motion to remand (Doc. 8). This written report and recommendation follows on the heels of the findings and rulings made on July 16, 2015, as a memorialization of those findings and rulings. As noted in open court, this matter is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the notice of removal (Doc. 1), plaintiff's motion to remand (Doc. 8), defendant Chippewa Lakes, LLC's ("Chippewa Lakes") memorandum in opposition (Doc. 19), plaintiff's response to the memorandum in opposition (Doc. 21), defendant's motion to strike or in the alternative, sur-reply (Doc. 23), plaintiff's response in opposition to the motion to strike/sur-reply (Doc. 24), the additional response in opposition of Chippewa Lakes (Doc. 31), and plaintiff's additional brief in support of remand (Doc. 37). Since the undersigned considered all of the foregoing pleadings in reaching its determinations and finds that plaintiff's argument regarding the Quiet Title Act's statute of limitations does nothing to inform this decision, the defendant's motion to strike that argument (Doc. 23) is **MOOT**. Nevertheless, as stated during the hearing,

the Magistrate Judge does recommend that the Court **GRANT** plaintiff's motion to remand (Doc. 8).

## **FINDINGS OF FACT**

As indicated in the hearing on July 16, 2015, the undersigned finds that the following facts are both undisputed and relevant to consideration of the motion to remand. The Alabama State Port Authority ("Port Authority") filed an action in the Circuit Court of Mobile County, Alabama on February 2, 2015, seeking a declaration that it is the owner of the described interest (easement) in certain real property near the Mobile River historically used for the disposal of spoil resulting from maintenance dredging. (Doc. 1, Exhibit A, COMPLAINT.) The Port Authority filed its state-court quiet title action, via the procedural vehicle of declaratory judgment, following certain actions by Chippewa Lakes in April of 2013.

> 11. In April, 2013, Defendant, acting through counsel, notified Plaintiff that Defendant was cancelling spoil disposal easement agreements executed by its predecessors in title in 1956 and 1963 which were both terminable according to their terms. Separately, on April 12, 2013, Defendant's counsel notified Plaintiff's Director that, following the cancellation of such easements, Plaintiff lacked any other authorization to dispose of dredge spoil on Defendant's property, describing such property broadly so as to include the acreage made the subject of the condemnation proceeding in which Defendant's predecessors had stipulated to entry of a judgment of condemnation and [received] over $1,000,000.00 in compensation.
>
> 12. Defendant's stated basis for asserting that Plaintiff acquired nothing by this expensive condemnation was a perceived timing issue involving a declaratory judgment action involving Plaintiff, Defendant's predecessors, and other parties, which was dismissed with prejudice by stipulation of the parties, on April 9, 1990.
>
> 13. Undersigned counsel have communicated with Defendant's counsel to explain Plaintiff's rationale for asserting that it indeed owns the interest in Defendant's real property which it condemned, by agreement with Defendant's predecessors, and paid for, but Defendant's attorney has recently advised that Defendant continues to maintain that Plaintiff owns no such interest.

> 14. A justiciable controversy exists between the parties which the Court ought to resolve by entry of a declaratory judgment. Moreover, the need for resolution of this justiciable controversy is significant and urgent given that Plaintiff is obligated to provide dredge spoil locations for use by the U.S. Army Corps of Engineers when channel dredging occurs, and it is anticipated that channel dredging will be necessary in the near-term future.

(*Id.* at ¶¶ 11-14.) Earlier paragraphs of the complaint set the stage for the Port Authority's claim to that certain real property near the Mobile River, which is the subject of this lawsuit.

> 4. The Mobile River ship channel, by virtue of shoaling and settlement, is caused to become shallow and less than its authorized depth from time to time, necessitating dredging by the United States Army Corps of Engineers to maintain the authorized depth. In order to do this, it is necessary to take the sediment from the bed of the river and pump the same onto land, specifically into spoil areas which have been acquired for the purpose of depositing said dredged material.
>
> 5. Plaintiff, the Alabama State Port Authority, previously the Alabama State Docks Department, has been designated by the Governor of Alabama as the State agency to handle the requirements as local sponsor for the maintenance dredging of the Mobile ship channel, one of which is that the State furnish to the United States Army Corps of Engineers, without cost, the area on which spoil material is to be placed after dredging.[1] For this purpose, Plaintiff has acquired spoil areas within various portions of Blakely Island, Mobile County, Alabama, inasmuch as there have been no other suitable sites available for the disposal of such dredged material.
>
> 6. For the purpose of carrying out its responsibilities as State sponsor for the Mobile River ship channel project, Plaintiff initiated a

---

[1] Indeed, in accordance with a Pledge for Local Cooperation for Federal Project – Mobile Harbor, Alabama dated on or about September 26, 1962, the Alabama State Docks Department (predecessor to the plaintiff), agreed "to furnish without cost to the United States, suitable spoil-disposal areas for the new work and for subsequent maintenance when and as required; provide suitable depths in the berthing areas at terminals when and as required; and hold and save the United States free from all damages due to construction and maintenance of the improvements." (Doc. 8, Exhibit A to Affidavit of James K. Lyons.) According to the Director and CEO of the Alabama Port Authority, James K. Lyons, it was in order to perform the obligations set forth in the Pledge Agreement that its predecessor, the Alabama State Docks Department, acquired the 1963 easement over the Meaher property that is the subject of this lawsuit. (*See* Doc. 8, Exhibit 2, Lyons aff., at 1.)

proceeding to condemn lands in the Mobile County Probate Court, in 1988, naming as respondents Defendant's predecessors in title, and seeking to obtain by eminent domain an interest in the lands described on "Exhibit A" to this complaint.[2]

7. On May 5, 1988, Judge of Probate Lionel W. Noonan entered a judgment and order granting the complaint. After appointment of commissioners to value the interest being taken, the amount of damages and compensation to Defendant's predecessors for the parcel described on "Exhibit A" was set at the sum of $978,900.00, and on June 2, 1988, the Probate Judge entered a Judgment, Order Filing Report of Commissioners and Order of Condemnation, establishing the amount to be paid to the landowners and adjudging that the real property described on "Exhibit A" was condemned and its title transferred to Plaintiff upon the payment or deposit of the assessed damages and compensation. Plaintiff appealed the order of condemnation on June 20, 1988, but paid the full amount of the award, $978,900.00, into Court pending appeal.

8. Subsequently, the parties settled their differences while the appeal was pending, resulting in a stipulated Judgment, entered on April 16, 1990, whereby the Circuit Court of Mobile County adjudged the following:

    a. "that the acquisition of the described land is for public use; that it is necessary that the property described in said complaint, as amended, be condemned for the uses and purposes set forth in said Complaint, as amended, and that the prayer of said Complaint, as amended, be granted;" and

    b. "that the condemnation award in the foregoing matter, in favor of the defendants, should be the $560,000.00 heretofore distributed to the defendants plus all amounts due including interest on the Certificate of Deposit with AmSouth Bank, N.A., dated January 24, 1990, in the sum of $4,267.37, which will be in full and complete compensation and award of damages due the defendants in this matter."

9. Following the entry of said judgment, Defendant's predecessors collected said agreed sum, which include[ed] interest on the funds on deposit exceed[ing] $1,000,000.00, and cancelled the judgment of record.

---

[2] The United States was not a party to this lawsuit. (*See* Doc. 19, Exhibit B, at 1.)

4

> 10. Over the intervening years, periodical dredging of the Mobile ship channel has occurred, and spoil resulting from said dredging has been deposited on the property described in "Exhibit A."

(*Id.* at ¶¶ 4-10 (footnotes added).)

Chippewa Lakes removed this action to this Court on March 27, 2015. (Doc. 1.)[3] Therein, the defendant averred that removal is proper pursuant to 28 U.S.C. § 1441(a)[4] (Doc. 1, ¶ 2) and then, as admitted during the hearing on July 16, 2015, "leapt" to 28 U.S.C. § 1346(f) (*see id.* at 3-4), which provides that "[t]he district courts shall have exclusive original jurisdiction of civil actions under section 2409a[5] to quiet title to an estate or interest in real property in which an interest is claimed by the United States,"

---

[3] The removal of this action occurred some three and one-half (3½) hours after Chippewa Lakes sued the United States (the United States Corps of Engineers) for declaratory and injunctive relief pursuant to the Quiet Title Act, 28 U.S.C. § 2409(a). *See Chippewa Lakes, LLC v. United States*, Civil Action No. 15-0169-KD-C, Doc. 1. Therein, Chippewa Lakes seeks entry of a declaratory judgment "to the effect that the fee simple title to the subject real estate is owned by Chippewa Lakes, LLC, free and clear of the burden of any easement, right, title, or interest of the United States of America, or its agency the U.S. Corps of Engineers" and entry of a permanent injunction "against the United States of America and the U.S. Corps of Engineers prohibiting them, their agents, employees, contractors, and those acting on their authority or direction, from entering on or upon the subject real estate or from conducting any activity thereon[.]" *Id.*, Doc. 1, at 12. As was made clear at the hearing, the United States has disclaimed any interest in the subject property and, more importantly, as admitted by Chippewa Lakes, while it owns fee simple title to the subject real property, the Port Authority holds record title to the easement burdening the fee simple title to the land held by Chippewa Lakes and it is this easement that is being challenged herein. The Port Authority, as record titleholder of the easement, allows the Corps of Engineers to utilize the easement for disposal of spoil produced during maintenance dredging to the Mobile River ship channel. This, of course, is why there is a Corps of Engineers sign on the property demarking "Maintenance of the Mobile Uplands" designed by the Corps of Engineers and the construction of which is supervised by the Corps of Engineers. (*See* Doc. 19. Photograph 1 attached to Declaration of Joseph A. Guess, Sr.)

[4] "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

[5] Section 2409a(a) reads, in relevant measure, as follows: "The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." *Id.*

*id.* (footnote added), without citation to the appropriate "initializing" statute that informs this Court's jurisdiction (*see* Doc. 1); however, as indicated by previous order (Doc. 30, at 2), and confirmed by Chippewa Lakes during the July 16, 2015 hearing, the defendant meant to rely on 28 U.S.C. § 1331 as the initializing statute informing the Court's jurisdiction, this statute providing that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.*

As referenced during the hearing on July 16, 2015, when plaintiff filed its motion to remand on April 22, 2015, it attached thereto the notarized disclaimer of Willie L. Patterson, Chief of the Real Estate Division of the United States Army Corps of Engineers, Mobile District. (Doc. 8, Exhibit 1.)

> 2. Under my immediate control and custody, and on file of record in the United States Army Engineer District, Mobile, Alabama, are records which reflect correspondence and activities of a real estate nature concerning the construction, operation, and maintenance of the Mobile Harbor Navigation Project in Mobile County, Alabama.
>
> 3. In the operation and maintenance of the Mobile Harbor Navigation Project is an area located on Blakeley Island in Mobile County which is designated as dredge material disposal area and named the North Blakely Disposal Area. This area includes a portion of Lot 22, being more particularly described as follows:
>
>> A portion of the Easterly Projection of Lot 22, Blakely Island, said lot shown on record plat recorded in Deed Bok 65 N.S., page 428, et seq. in the Probate Records of Mobile County, Alabama being more particularly described as follows: Commencing at an existing 2" open top pipe in the location of an obliterated concrete monument shown on many previous plats as being the intersection of the South line of Lot 22 and the Northerly extension of the 120['] Old Hwy, 90 R.O.W.; thence South 89°38'52" East, along the South line of said Lot 22 a distance of 1,576.01 feet to a set 5/8" capped rebar on the West shoreline of Polecat Bay as shown on State of Alabama Conservation Map dated April 2, 1973 being the Point of Beginning; thence Northerly along said shoreline along the following courses: thence North 35°09'15" West, a distance of 359.84 feet to a point; thence North 21[°]48[']05"

>West, a distance of 807.77 feet to a point; thence North 02°51′45″ West, a distance of 349.80 feet more or less to a set 5/8″ capped rebar; thence North 88°32′56″ East, leaving said shoreline a distance of 858.39 feet to a point; thence South 89°05′24″ East, a distance of 570.43 feet to a point; thence North 89°12′45″ East, a distance of 846.46 feet to a point; thence South 14°22′50″ East, a distance of 753.79 feet; thence South 13°35′59″ East, a distance of 720.90 feet to a point; thence North 89°38′52″ West, a distance of 2,106.97 to the Point of Beginning, said parcel containing 73.93 acres, more or less.[6]
>
>4.   The use of the North Blakely Disposal Area is provided for the operation and maintenance of the Mobile Harbor Navigation Project by the Alabama Port Authority, formerly known as the Alabama State Docks Department, who is the non-Federal-local sponsor for the Project and as such is responsible for providing all necessary real estate interests. The use of this area by the United States is permissive under an easement acquired by the Port Authority for Project purposes.
>
>5.   A search of the records under my care and custody reveal that the United States holds no current easement, estate or interest in the disposal area, including the property in Lot 22 described above. The United States disclaims all interest in the real property or interest therein adverse to the owner of the property.

(Doc. 8, Exhibit 1, at ¶¶ 2-5.)

## CONCLUSIONS OF LAW

### A.   Jurisdiction in General.

As implicitly referenced during the hearing on July 16, 2015, "[f]ederal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citation omitted); *see also Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir.) ("[R]emoval statutes should be construed narrowly, with doubts resolved against

---

[6] This is the same description of the subject real property set forth in Chippewa Lakes' complaint against the United States filed on March 27, 2015. *Chippewa Lakes, LLC v. United States*, CA 15-00169-KD-C, Doc. 1, at ¶ 5.

removal."), *cert. denied*, 540 U.S. 877, 124 S.Ct. 277, 157 L.Ed.2d 140 (2003); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" (internal citations omitted)). Moreover, the removing defendant must bear "the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted); *see also McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction."). Stated differently, because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted). Indeed, "[b]ecause removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all jurisdictional doubts being resolved in favor of remand to state court." *Brown v. Endo Pharmaceuticals, Inc.*, 38 F.Supp.3d 1312, 1318 (S.D. Ala. 2014) (citation omitted).

    **B.**    **Federal Question Jurisdiction**. As noted above, Chippewa Lakes contends that federal jurisdiction lies in this case pursuant to the federal question provisions of 28 U.S.C. § 1331, which provides that federal courts possess "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

United States[,]" 28 U.S.C. § 1331. In *Gunn v. Minton*, ___ U.S. ___, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013), the Supreme Court reiterated that "[f]or statutory purposes, a case can 'aris[e] under' federal law in two ways." *Id.* at ___, 133 S.Ct. at 1064.

> Most directly, a case arises under federal law when federal law creates the cause of action asserted. As a rule of inclusion, this "creation" test admits of only extremely rare exceptions, and accounts for the vast bulk of suits that arise under federal law[.] . . .
>
> But even where a claim finds its origins in state rather than federal law . . . we have identified a "special and small category" of cases in which arising under jurisdiction still lies. . . .
>
> In an effort to bring some order to this unruly doctrine several Terms ago, we condensed our prior cases into the following inquiry: Does the "state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"? That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

*Id.* at ___, 133 S.Ct. at 1064-1065 (internal citations omitted).

During the hearing on July 16, 2015, Chippewa Lakes unequivocally stated that it was relying solely on *Gunn v. Minton*'s first path to § 1331 jurisdiction, that is, the "federally-created" cause of action path, and that it is not attempting to base federal jurisdiction on a state claim that raises a federal issue or that it could meet *Gunn v. Minton*'s four requirements. For this reason, the Court confined its findings and rulings, on July 16, 2015, to the "first way" to § 1331 jurisdiction mapped by the Supreme Court in *Gunn v. Minton*.

The Court then turned its attention, during the hearing, to *Cedar Creek Land & Timber, Inc. v. Guy*, 2015 WL 728107 (S.D. Ala. Feb. 18, 2015), wherein Judge Steele recognized that "'[t]he test ordinarily applied for determining whether a claim arises under federal law is whether a federal questions appears on the face of the plaintiff's well-pleaded complaint[,]'" *id.* at *2 (citations omitted), does not apply "to an assessment of whether § 1331 jurisdiction is proper for a declaratory judgment action." *Id.* at *3, citing *Stuart Weitzman, LLC v. Microcomputer Resources, Inc.*, 542 F.3d 859, 862 (11th Cir. 2008). In other words, "the jurisdictional framework and analysis differ in the context of a declaratory judgment claim." *Id*.

> [T]he "face of the complaint" rule is inapplicable to an assessment of whether § 1331 jurisdiction is proper for a declaratory judgment action. Instead, the rule is that "[f]ederal question jurisdiction exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant *could* file a coercive action arising under federal law."[7] The Supreme Court precedent from which the Eleventh Circuit derived the rule applied in *Stuart Weitzman*[, *LLC v. Microcomputer Resources, Inc.*, 542 F.3d 859, 862 (11th Cir. 2008)] was pellucidly clear that it applies both in original jurisdiction and removal actions, and as to both federal declaratory judgment actions and state declaratory judgment actions.
>
> The upshot is this: "[A] federal district court has subject-matter jurisdiction over a declaratory judgment action if . . . a plaintiff's well-pleaded complaint alleges facts demonstrating the defendant could file a coercive action arising under federal law."

*Id.* (internal citations and one footnote omitted; one footnote retained and two footnotes added; emphasis in original).

---

[7] "The declaratory judgment vehicle is purely procedural, so the relevant inquiry is whether the cause of action *anticipated* by the declaratory judgment plaintiff would arise under federal law. In other words, if declaratory relief did not exist, and the declaratory judgment defendant were to sue the declaratory judgment plaintiff for coercive relief, could that action have been brought in federal court? This is the pertinent jurisdictional question embodied by the above-cited rule." *Cedar Creek Land & Timber, Inc., supra,* at *3 n.5 (emphasis in original; citation omitted).

As noted during the hearing, the pertinent question is if the declaratory judgment defendant—here, Chippewa Lakes—were to sue the declaratory judgment plaintiff—that is, the Alabama Port Authority—for coercive relief, could that action have been brought in federal court? Chippewa Lakes, of course, answers this question in the affirmative by noting that the Port Authority's state-court complaint alleges facts giving rise to an "interest" in the subject property held by the United States and, therefore, argues it could have filed a coercive action under the federal Quiet Title Act, 28 U.S.C. § 2409a, "challenging the 'interest' of USACE and the Port Authority in the subject real estate." (*See, e.g.*, Doc. 31, at 3-4.) As expressed during the hearing, the undersigned has serious doubts about this Court's jurisdiction and, therefore, is constrained to recommend remand of this action to the Circuit Court of Mobile County, Alabama.

As referenced during the hearing, given the pertinent question that must be answer, logically the only answer is that Chippewa Lakes would have a coercive action against the declaratory judgment plaintiff—a state agency/entity—solely under Alabama law, that is, a state-law claim to quiet title or even, perhaps, for ejectment. *See Cedar Creek Land & Timber, Inc.*, at *3. In other words, there is no federal statute that would have conferred a right of action on Chippewa Lakes to sue an agency of the State of Alabama within the state over real property ownership; rather, any claims by Chippewa Lakes against the Alabama Port Authority would sound in state-law claims to quiet title or for ejectment. The assertion by Chippewa Lakes that it could have asserted a coercive action against the Alabama Port Authority under 28 U.S.C. § 2409a simply cannot be sustained because § 2409a contemplates the United States as a party defendant regarding disputed title to real property in which the United States claims an

11

interest and the United States is not a party to the instant action[8] and, moreover, has now disclaimed any interest in the subject property.[9] And to the extent Chippewa Lakes argues that a well-pleaded complaint filed by the Alabama Port Authority would have joined the United States as a party[10] the undersigned cannot agree in light of the history of the property in question, Chippewa Lakes' admission that the Port Authority holds record title to the easement burdening the fee simple title to the real property held by Chippewa Lakes that is the subject of this lawsuit, and the fact that all lawsuits filed in the past regarding this property, and that are or may be relevant to this case,[11] have been instituted by the Port Authority's predecessor with no participation by the United States as a party.

## CONCLUSION

Based upon the foregoing, all arguments made by the Port Authority in its briefs, which are adopted herein and incorporated by reference, and all other relevant comments of the undersigned during the hearing on July 16, 2015, it is **RECOMMENDED** that plaintiff's motion to remand (Doc. 8) be **GRANTED** and that

---

[8] As the Alabama Port Authority correctly points out, § 2409a would not confer on this Court jurisdiction in a suit filed by Chippewa Lakes against it to determine title to the real property at issue because the United States is not a party to the action.

[9] The undersigned is considering the disclaimer not as approved by the Court but as part and parcel of whether Chippewa Lakes has satisfied its burden of establishing that if it were to sue the Port Authority for coercive relief that action could necessarily be filed in federal court.

[10] As noted during the hearing, Chippewa Lakes never moved to join the United States as a party to this action (either before removal in the state court or following removal to this Court); instead, the United States was named as a party in a separate suit filed by Chippewa Lakes in this Court.

[11] The undersigned need note the importance of having the property rights involved in the underlying declaratory judgment action resolved by the very court that granted the easement at issue.

this cause be remanded to the Circuit Court of Mobile County, Alabama from whence it came.[12]

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or the oral rulings made on the record during the July 16, 2015 hearing must, within fourteen (14) days of the hearing date, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The proceeding on July 16, 2015 was electronically recorded and is available to the parties and United States District Judge Kristi K. DuBose for review. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing

---

[12] The deadlines set forth in the Rule 16(b) scheduling order (Doc. 29) are hereby **STAYED** pending final disposition of the motion to remand.

before the Magistrate Judge is not specific.

**DONE** this the 20th day of July, 2015.

       <u>s/WILLIAM E. CASSADY</u>
       **UNITED STATES MAGISTRATE JUDGE**